KELLERMAN CONTRACTING COMPANY, Respondent, v. THE CHICAGO HOUSE WRECKING COMPANY, Appellant.

St. Louis Court of Appeals, April 6, 1909.

1. **SALES: Contracts: Parol Negotiations Merged Into Written Contract.** An oral agreement touching the sale and removal of a building was merged into a written agreement subsequently executed, and, in an action upon such agreement, parol evidence was inadmissible to engraft such anterior verbal stipulation upon the writing.

2. ————: ————: **Surrounding Circumstances: Unambiguous Contract.** In a suit upon a written contract for the sale of a building which was unambiguous in its terms, evidence was inadmissible to show the circumstances surrounding the transaction.

3. ————: ————: **Removal of Personal Property Sold.** A bare contract for the sale of personal property such as a building does not involve a contract obligation to remove the building from the premises where it is situated at the time of the sale.

4. ————: ————: ————. But where a building was sold and delivered to the purchaser and was at the time situated upon land where the purchaser had no right to maintain it, it was his duty to remove it, but this duty was imposed by law as an incident of ownership and not as a part of the contract of sale.

5. ————: ————: ————: **Pleading.** In such a case the remedy for failure of the purchaser to remove the building will be an action in tort. Where the seller of a building sued the purchaser, declaring upon a contract to remove the building and clear away the debris from the site, asking damages for breach of the contract, and the contract between the parties was shown to be a simple contract of sale without other stipulation, the plaintiff could not recover; the contract alleged was not proven.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*Nagel & Kirby* for appellant.

(1) Where parties have reduced their contract to writing, it is conclusively presumed that the writing embodies and expresses their entire agreement. In arriving at the meaning of that agreement, the court is limited to the language employed by the parties. "The question is not, what did the parties mean to say but what is the meaning of what they have said." Missouri Edison Co. v. Bry, 88 Mo. App. 138; Addison on Contracts (8th Ed.), p. 183; 1 Greenleaf on Evidence, sec. 277. (2)

Where the contract is express, no additional obligation will be implied, unless it is indispensably necessary to enable one of the parties to perform his expressed obligation under the contract between them. It will not be implied where it is convenient or necessary to enable the party to comply with other contracts with third parties. 1 Chitty on Contracts (11 Am. Ed.), p. 89; Canal Co. v. Coal Co., 8 Wall. 276.

*Ferriss, Zumbalen & Ferriss* for respondent.

(1) A writing or contract should be read in the light of surrounding circumstances, in order the more perfectly to understand and explain the intent and meaning of the parties. Lumber Co. v. Warner, 93 Mo. 384; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 62; Bolt and Nut Co. v. St. Louis Car Co., 210 Mo. 735. (2) The contract in suit was one for the sale of specific chattels. Rodgers v. Cox, 96 Ind. 157; Lowenberg v. Bernd, 47 Mo. 297; Brown v. Turner, 113 Mo. 27. (3) In a sale of specific chattels, silent as to the place of delivery, the buyer is bound to accept delivery at the place where they are, and to take them away within a reasonable time. If he fails to remove them the seller may bring an action for not removing them should he be prejudiced by such failure. Benjamin on Sales (4th Am. Ed.), sec. 700; Burdick on Sales (2d Ed.), p. 228; Davis v. Emery, 61 Me. 140; Dibblee v. Corbett, 9 Abb. Prac. 200; Taylor v. Rowland, 1 Daly (N. Y.) 446; Fuerstenberg v. Fawsett, 61 Md. 184.

GOODE, J.—The parties entered into the following contract:

"St. Louis, 2-7-05.
"Kellerman Contracting Company,
    "418 Roe Building, City.
    "Gentlemen: We accept your proposition of $600 for the German House, also the Restaurant and all ma-

terial therein, excepting such as belongs to the German Commission, and certain plumbing.   This is free of all incumbrances, liens, etc.

"Payment to be made for the above property when same is delivered to us.

"Yours truly,

"CHICAGO HOUSE WRECKING COMPANY,

"A. HARRIS, Prest.

"Accepted:   KELLERMAN CONTRACTING COMPANY,

"WM. LEHR, Secr."

The buildings mentioned in the contract were constructed by the German Government in that portion of Forest Park in the city of St. Louis, which was the site of the Louisiana Purchase Exposition.   The municipal government of St. Louis had granted to the exposition company the privilege of using Forest Park for an exposition on the condition that all structures erected in the park and property used in connection with the exposition, should be removed from the park within six months after the close of the fair.  The contract between the exposition company and the State of Germany granting the latter a concession to erect the buildings mentioned, bound the German government to remove the buildings and all obstructions from the site and grounds of the exposition in sixty days after the fair closed, clear and clean the place and restore the same to its original condition as far as practicable. The German government let the contract for the construction of the buildings to plaintiff and provided in the contract the buildings should be wrecked and removed from the premises on or before January 31, 1905; further agreeing all the wrecked property should belong to plaintiff.   It will be seen by the agreement quoted supra, plaintiff sold the two buildings and all the materials therein, except parts belonging to the German Commission, and plumbing material, to defendant on February 7, 1905.   The buildings were delivered to defendant March 23, 1905, and the evi-

dence showed two months would be a reasonable time in which to wreck them and remove the material. Defendant commenced wrecking work in July and continued it until September or October. The buildings were composed of wood, plaster and staff, and after they were demolished, defendant took out such material as it deemed valuable, but left the ground littered with staff, lath, broken lumber and other rubbish. The exposition company notified plaintiff to restore the site to its original condition, and on November 2, 1905, plaintiff made a written demand of defendant to do this work, saying the buildings had been sold with the understanding defendant was to wreck them and put the place in the shape it was in before the buildings were erected. Defendant did not remove the rubbish and in consequence of its alleged default in this regard, plaintiff removed it at an expense of over eight hundred dollars, as the court found. This action was instituted to recover reimbursement for that outlay, the petition declaring in two counts on the contract between plaintiff and defendant, which we have copied. As matter of inducement an ordinance of the city of St. Louis granting the right to use the Park to the Exposition Company and providing the company should clear the park of all structures, rubbish and debris after the exposition closed, and the contracts between the Exposition Company and the German Government and between said government and the plaintiffs to the same effect, were all pleaded in the petition, which then avers in the first count defendant agreed in its contract with plaintiff to tear down and remove all said structures, and all material of any kind and nature, in a good and workmanlike manner, from and out of said park and within the time the buildings were to be removed according to the contract between the city and the Exposition Company and between the German Government and this plaintiff, further alleging a breach of the agreement. The second count of the petition is like the first except in alleging defendant agreed to remove the structures.

rubbish and debris within a reasonable time. Oral evidence was admitted over the objection of defendant, of a conversation between plaintiff's secretary and the defendant's president at the time the written contract of February 7th was made, in which the former told the latter the buildings must be wrecked by January 31, or February 1, 1905, but plaintiff could not get possession of them then. The secretary testified nothing was said between the two about the removal of the rubbish. It should be stated that defendant objected to the introduction in evidence of any of the contracts except the one in suit. Judgment having been entered in favor of plaintiff for the amount it had paid out for clearing away the rubbish left by defendant, this appeal was taken.

Plaintiff's theory is, in legal effect, that defendant stepped into its shoes as regards the obligation of plaintiff's agreement with the German Government, to remove the material from the site of the buildings and restore the same to the condition it was in before they were erected. But so far as its express terms go, the contract between these parties is simply one for the sale of the two buildings and the material composing them, with certain exceptions. An agreement of the effect plaintiff insists on cannot be introduced into the contract by virtue of an oral promise made anterior to it; for this would be to engraft a verbal stipulation on an obligation in writing. [Tracy v. Iron Works, 104 Mo. App. 193.] The circumstances under which the contract was made, the situation of the parties, and the facts of which they were cognizant at the time, might be resorted to in interpreting the writing if it was ambiguous. But, in our opinion it is not, and, moreover, reference to those matters dehors the instrument could not possibly import into it the promise or agreement defendant alleged in the petition; namely, to clear the site of the buildings so it would look like it did before they were erected. [Greaves v. Ashlin, 3 Camp. * 426.] Plaintiff's counsel say if the instrument must be construed from its four

corners, such a construction of it involves an agreement to remove all the material from the site; because the law carries such an agreement into every contract for the sale of a chattel as part of the buyers' obligation, and the buildings were treated as chattels. [Davis v. Emery, 61 Maine 140.] We know of no legal principle or authority, nor have we been referred to any, which reads into and makes part of a bare contract for the sale of personal property a promise by the vendee to remove it from the premises of the seller or other locality where it happens to be. The sale of a chattel binds the buyer to accept it when tendered to him under the terms of the contract; and delivery and acceptance pass the title to him with the burdens of ownership, which will include, under some circumstances, the removal of the property. When the buildings and material composing them were turned over to defendant and accepted, we think it was incumbent on defendant to take the property away, but this duty was a consequence of the contract of sale and not a term of or undertaking in it. The duty was imposed by law as an incident of ownership, and not as a part of the agreement the parties made, which related solely to a sale. The remedy for failure to perform said duty, sounds in tort in the nature of the common law remedy of trespass on the case, but we do not say the tort might not be waived and an action maintained on an implied assumpsit. [Bliss, Code Pleading (4 Ed.), sec. 153, et seq.; Pomeroy, Code Remedies (4 Ed.), sec. 458, et seq.; Crane v. Murray, 106 Mo. App. 697.] In either form of action the question would arise whether the duty was to plaintiff or to the city as owner of the site, and which could seek redress against defendant. We think the authorities cited by plaintiff, as far as they are pertinent, dealt with instances where there was either an express agreement to remove the thing sold, as in Davis v. Emery, supra, or with actions in tort, or perchance on a fictitious assumpsit implied by law in consequence of the tort. [Diblee v. Corbet, 9 Ab. Pr. 200;

Dayton v. Roland, 1 Davy, 446 Furstenburg v. Fawcett; 51 Md. 184; Story, Sales; 375; Benjamin, Sales, sec. 700.] We have not found any discussion of the question of procedure in such cases in opinions or text-writers. The character of an action is determined from the aver- ments of the petition, and it is sometimes difficult to say whether the pleader has declared on an express contract or has merely pleaded one as matter of inducement and sought relief for a tort. The rule is that if redress ex delicto is desired, there must be no averment of a direct promise. [21 Ency. Pl. and Pr., 913.] Beyond doubt the present petition declares on the written agreement entered into by the parties, and adopts the theory that defendant undertook thereby to clear away the buildings and bring the site back to a state of nature. As plaintiff must recover, if at all, on the contract alleged, and as none such was proved, the judgment will be reversed and the cause remanded. [Clements v. Yeats, 69 Mo. 623; Cole v. Armour, 154 Mo. 333; Laclede Const. Co. v. Iron Works, 159 Mo. 137, 154.] All concur.