TOWNSHIP OF WOODBRIDGE, A MUNICIPAL CORPORA-
TION IN THE COUNTY OF MIDDLESEX, STATE OF NEW
JERSEY, PLAINTIFF-RESPONDENT, v. TYSON CORPOR-
ATION, A CORPORATION OF THE STATE OF NEW JER-
SEY, AND WOODBRIDGE PLASTICS, INC., A DELA-
WARE CORPORATION AUTHORIZED TO DO BUSINESS
IN NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued January 25 and 26, 1971—Decided June 25, 1971.

440

*Mr. Henry Farer* argued the cause for appellants (*Messrs. Farer and Krueger,* attorneys).

*Mr. Norman Robbins* argued the cause for respondent.

PER CURIAM. This case involves the ownership of a prefabricated building, machinery, equipment and inventories. Defendant (the two corporate defendants may be treated as one) conveyed the lands to plaintiff, reserving the right to remove those items, but defendant did not remove them within the stipulated time. The trial court found for defendant. The Appellate Division reversed, and we granted defendant's petition for certification. 57 *N. J.* 140 (1970).

The controversy has a lengthy history. Defendant owned real property in the Township of Woodbridge upon which it conducted an industrial operation. The lands were later zoned for residential use, defendant's operation thereupon becoming non-conforming. Somehow building permits were issued for the erection of additional industrial buildings and structures although variances were not sought. Plaintiff sued to enjoin the zoning violations, and a consent judgment was entered on December 13, 1961 which called for the removal of those additional buildings and structures within three years from that date.

Defendant later sought relief from that judgment. The further proceedings initiated by defendant resulted in the entry of an amended judgment dated June 11, 1965, superseding the earlier one. The present case turns upon the meaning of the 1965 judgment.

The 1965 judgment in substance embodied an agreement rather than a judicial determination of a controversy. The evident aim was to terminate the industrial operation completely, including the nonconforming use which could lawfully have been continued. To that end defendant agreed to convey the lands, then worth about $30,000, to the plaintiff Township without the payment of any dollar consideration. In exchange defendant was given permission "to operate all their existing facilities on the aforesaid lands and premises until June 30, 1967." The judgment continued:

"3. Upon said date, namely, June 30, 1967, all manufacturing operations shall terminate with respect to all structures on defendants' lands and premises;

4. Upon termination of manufacturing as aforesaid, defendants shall be permitted a reasonable time, not to exceed six months, within which to dismantle and remove whatever buildings, machinery, equipment, inventories, or other property they desire from the premises;

5. That upon completion of said dismantling and removal of defendants' property, defendants shall vacate said premises and surrender possession thereof to the plaintiff; that upon surrendering of possession as aforesaid, plaintiff shall assume the task, responsibility and cost of demolition and removal of any structures as it sees fit, and defendants shall have no responsibility or liability in connection therewith;

7. That contemporaneously with the entry of the within Amended Judgment, defendants will execute and deliver to plaintiff a bargain and sale deed conveying all of their right, title and interest in the subject premises to the plaintiff. Said deed will reserve to the grantor the exclusive right to possession and control of the premises in accordance with the terms and conditions of this Amended Judgment."

Jurisdiction was retained "in order that any party may apply on motion for further directions or relief at the foot of this judgment."

Defendant delivered the deed as required by paragraph 7 of the amended judgment, reciting that the conveyance was

subject to the terms of the amended judgment and reserving to defendant "the sole and absolute right to the use, occupation, possession, control, rents, issues and profits of the property herein conveyed until December 31, 1967, in accordance with the terms, conditions and provisions of the aforesaid Amended Judgment."

The sense of the transaction was that defendant would remove what defendant wanted, with the plaintiff municipality having the burden to dismantle and remove whatever defendant did not take. At that point, the municipality wanted the lands as such; it was not bargaining for any structure or personal property located on the premises, and the evident expectation was that defendant would take whatever was worth moving. We gather that the municipality later conceived that the so-called "Butler" building could be used to house recreational facilities, and, hence, defendant not having removed it by December 31, 1967, as required by the amended judgment and the deed, the municipality asserted that it had thereby acquired title to the Butler building and as well to the machinery, equipment and inventories which were still on the lands. The Butler building is a prefabricated metal structure, which originally cost $75,000 and which could be dismantled, removed and reassembled.

No formal action was taken by either party at the end of the year 1967. It appears that defendant continued to remove machinery and materials until about April 11, 1968, when plaintiff contacted defendant with respect to the unsightly condition of the lands. Plaintiff then asserted that it owned everything, which defendant disputed. An agreement was then made for defendant to cart away the debris. Plaintiff says the inducement to defendant was the value of what could be salvaged from the debris, while defendant, asserting there was no salvage at all, insisted the understanding was that if the debris were thus removed, plaintiff would not dispute defendant's right thereafter to remove everything defendant claimed to be its. Defendant says it spent $15,000

pursuant to that arrangement. Ultimately both parties applied to the trial court for relief.

The trial court did not resolve defendant's claim of estoppel based upon the factual matters outlined in the paragraph immediately above. It was unnecessary to do so because the trial court found that the amended judgment did not contemplate the forfeiture of those properties. The trial court thereupon ordered that defendant remove the property within a period of six months. The Appellate Division read the amended judgment to mean that the right to remove was conditioned upon removal by December 31, 1967. We think the trial court's view was correct.

The transaction was in essence a sale of real property, with a deferred date for delivery of possession. The agreement as embodied in the amended judgment did not anticipate the eventuality which later ensued. As we have said, it was expected that the grantor would remove everything of value. Indeed at that time the grantee hoped for a maximum clearance of the lands, thus to minimize the dollar burden which would be the grantee's to demolish and cart away what the grantor chose to leave behind. Being interested in the lands, the grantee understandably did not ask for a provision vesting it with title to everything not removed by December 31, 1967. And the grantor never agreed that the remedy for a failure to comply with the amended judgment would be a transfer of title to property the grantor did not intend to abandon. *Cf. Davis v. Emery,* 61 *Me.* 140, 14 *Am. Rep.* 553 (Sup. Jud. Ct. 1873) ; *Esbjornsson v. Buffalo Insurance Co.,* 252 Minn. 269, 89 *N. W.* 2d 893 (Sup. Ct. 1958) ; *Kennedy v. City of Hood River,* 122 *Or.* 531, 259 *P.* 911 (Sup. Ct. 1927).

The Appellate Division said that "While the form of the amended judgment is ambiguous and unclear because it did not expressly state that defendants would forfeit their rights to the personal property after December 31, 1967, we are convinced that that result was clearly implied." In that regard, the Appellate Division referred to the oral remarks of

the judge who signed the amended judgment. But we do not read those remarks to suggest title to these items would pass to the grantee on December 31, 1967. An agreement to forfeit should not be inferred when the arrangement is consistent with the normal assumption that a forfeiture was not intended.

But defendant was obligated to remove everything it wanted to remove by December 31, 1967. Defendant must therefore compensate plaintiff for the value of the use of the lands from December 31, 1967 to the date of removal of the unabandoned property, except for the period when plaintiff blocked the removal.

The judgment of the Appellate Division is reversed, and the judgment of the trial court is affirmed, with leave to plaintiff to apply in the cause for damages for defendant's failure to vacate by December 31, 1967.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance* — None.