[Civ. No. 7991. First Appellate District, Division Two.—November 2, 1931.]

THE FIRST NATIONAL BANK OF SAN PEDRO (a Corporation), Plaintiff and Appellant, v. CHARLES STANSBURY, Defendant and Respondent; JOHN BALCH, Cross-Defendant and Appellant.

Richard C. Goodspeed, Goodspeed, Pendell & McGuire and Goodspeed, Pendell & Neff for Appellants.

Miller & Ellis and William A. Alderson for Respondent.

STURTEVANT, J.—As assignee the plaintiff sued to recover on two promissory notes. The defendant answered and filed a cross-complaint and in that manner brought into the action John Balch, the assignor. The cross-complaint was answered and the trial was had before the court sitting without a jury. The court made findings in favor of the plaintiff and caused a judgment to be entered for a sum amounting to about one-half of the face of the notes. The plaintiff appealed from the judgment and it was reversed and the cause was remanded for the sole purpose of stating the account between Mr. Balch and Mr. Stansbury, who had been partners, making a new finding on that issue, and ordering judgment. (*First Nat. Bank* v. *Stansbury,* 62 Cal. App. 336 [217 Pac. 91].) That decision was filed May 29, 1923. After the *remittitur* went down the action was again called for trial. The defendant filed amendments to its cross-complaint and answer. ■ The plaintiff asserts that the defendant did not give notice that he would apply for permission to amend and that the amended pleadings were improperly filed. There is no merit in the contention because the same contention was raised in the trial court and the trial court sustained the objection and ordered the pleadings stricken out. Afterwards, on due notice, the defendant was given permission to amend and the same pleadings were again filed.

■ During the proceedings on the first trial an agreement was entered into that a referee could be appointed to state the account between Mr. Balch and this defendant. Prior to that agreement being entered into two different actions had been commenced by the plaintiff against the defendant on different promissory notes. By the terms of the agreement it was agreed between the parties that the

plaintiff should be allowed to take judgment in one of said actions and that the action we are considering should be referred to the referee to state the account. The agreement was in the form of a stipulation and was entered in the records. The defendant complied with the stipulation and after the judgment was entered in the other action he paid that judgment. When this action came on for trial the second time the defendant made a motion that it be again referred to a referee to state the account. In opposition to that motion the plaintiff contended that the stipulation had become *functus officio*. The trial court overruled the objection and ordered the reference. At no time did the plaintiff make any motion to be relieved from the alleged stipulation and it did not take any steps to place the defendant *in statu quo*. On its face the stipulation was a contract supported by a good and sufficient consideration and it does not appear that the trial court erred in again referring the action for the purpose of having the account stated according to the terms of the stipulation. (36 Cyc. 1394.) ■
The plaintiff complains because it was not given a jury trial. As will presently appear more fully, but one issue was tried and that was the issue as to what errors or mistakes had entered into an alleged stated account and to take an account thereof. This was the sole issue on trial and it was entirely covered by the stipulation which we have just been considering. It is perfectly clear that the plaintiff had by that stipulation waived a jury trial.

■ When the cause was before the District Court of Appeal it held that, as the pleadings then stood, there was no charge of fraud. When the cause went back for a second trial the defendant prepared amended pleadings. In his amended cross-complaint the defendant set forth three causes of action. To one of them the court sustained a demurrer. In another cause of action he pleaded fraud. As will later appear, he did not follow it up by offering proof and no judgment was given him on the basis of that cause of action. The third cause of action pleaded errors and mistakes that had been made in the alleged stated account and, as we understand the plaintiff, it does not claim that any error was committed in allowing an amendment to that cause of action. The plaintiff strenuously contended in the trial court, and at this time contends, that the judgment on the first trial

has become the law of the case. However, we do not understand it to extend that contention to the third cause of action as stated in the amended pleadings. If we misunderstand the plaintiff and if its contention is broader than as we have stated it the contention must be ruled against the plaintiff. That is so because on a retrial of the action the defendant had the same right to apply for permission to amend as though the case had never been tried. (*Ellis* v.*Witmer,* 148 Cal. 528, 531, 532 [83 Pac. 800].) In making this point below the plaintiff demurred to the amended pleadings and it also made a motion to strike out. The demurrer was properly overruled and the motion was properly denied. (Code Civ. Proc., sec. 473; *Ellis* v. *Witmer, supra.*) ▮ The trial court made an order allowing the defendant to amend his pleadings to conform to the proof. That application to amend was made in plaintiff's presence on December 23, 1926, but it was not allowed until February 9, 1927. On those facts the plaintiff predicates the statement that the order was made *ex parte.* Clearly that was not the fact.

▮ The plaintiff asserts that a new and amended report was made by the referee after his first report had been vacated and it asserts that the new report was made without first giving plaintiff an opportunity to be heard before the referee on either the old matters or any new matters. This point brings forth a consideration of certain defects in the record which are applicable to points numbers 8, 11, 12, 13, 15, 17 and 19—all of which involve the proceedings before the referee. No one of those points may be considered for two distinct but separate reasons. The plaintiff's brief contains much argument, but does not quote nor cite any part of the record showing the alleged irregularities. The transcript on appeal contains 1783 pages. The plaintiff's brief contains 347 pages. Other briefs are also very long. In the case of *Dauphiny* v. *Buhne,* 153 Cal. 757, 766 [126 Am. St. Rep. 136, 96 Pac. 880, 884], the court said: ''Neither in the briefs of counsel for appellant is it indicated where, nor in what part of the bill, the questions objected to, and the rulings of the court upon them, may be discovered. He contents himself with setting forth in a page or so in his brief a lot of questions which he claims the court erred in overruling his objections to. We are not even enlightened on

the subject as to whether the questions were answered or not. It is the duty of counsel to point out, specifically where alleged errors, upon which they rely, may be found in the transcript, and if counsel do not see fit to do so, it will be assumed that they have not deemed them of sufficient merit or importance to undertake the task. In any event, under such circumstances, this court will not assume the burden of doing it.'' In its brief the plaintiff refers to certain passages in the transcript. Those passages purport to be parts of the transcript of the reporter's notes of the proceedings before the referee. The references are not helpful. The referee was not asked to and he did not settle a bill of exceptions. (Code Civ. Proc., secs. 649, 650.) ▬ However, the plaintiff prepared a bill of exceptions and inserted therein the transcript of the reporter's notes and having done so he then had the trial judge certify to that bill of exceptions. The transcript of the reporter's notes is not certified by the reporter nor by the referee and the record does not show that it was used before the trial court, and therefore it may not be used on appeal. (2 Cal. Jur. 486; *Borges* v. *Dunham*, 169 Cal. 83 [145 Pac. 1011].) The statute expressly requires that exceptions taken before a referee shall be settled before him and that the bill be certified by him. (Code Civ. Proc., sec. 649; *Goodrich* v. *Mayor etc. of Marysville*, 5 Cal. 430.) ▬ When the statute expressly designates an officer to settle the bill of exceptions or certify a record on appeal such act may not be performed by a different official. (*Knoch* v. *Haizlip*, 163 Cal. 20, 22 [124 Pac. 997]; *Lake* v. *Harris*, 198 Cal. 85, 89 [243 Pac. 417]; *Estate of Carpenter*, 127 Cal. 582, 584, 585 [60 Pac. 162].) Wholly improper material inserted in the transcript will not be considered by a court of review. (*Sutton* v. *Symons*, 97 Cal. 475, 476 [32 Pac. 588]; *White* v. *White*, 112 Cal. 577, 580 [44 Pac. 1026].) The plaintiff asserts that the referee's report is not the result of an account *de novo* nor is it the result of surcharging and falsifying. On its face it appears to be an account of the errors and omissions which the defendant claims occurred. As we have just shown no bill of exceptions certified by the referee is in the record and therefore the record contains nothing in any manner impeaching the report. In this connection the plaintiff contends that the referee heard evidence as to certain transactions which oc-

curred at a time beyond the limit defined in one of the findings approved by the judgment of the District Court of Appeal in the first action. As already shown, these matters are not supported by any record that this court is entitled to examine.

The plaintiff cites authority to the effect that if the findings are contradictory they will not support the judgment. ■ Thereupon it proceeds to argue that certain findings made on the second trial are in conflict with the findings made on the first trial. After a full consideration of all of the facts we think that the point is entirely without merit. As stated above, the stipulation of the parties was that a referee could be appointed to state the account and report any errors or mistakes. The order of reference took the same scope. Nevertheless the report of the referee and his amended report on its face appears to show that it is a set of findings on the whole issue. Be that as it may, no judgment was entered on the referee's findings and those findings were not treated by the trial court as finding on the whole issue. (Code Civ. Proc., sec. 644.) On the other hand, both parties in the trial court and the court itself treated the report as a special verdict. The court adopted it and made its own findings and then ordered judgment. As will be seen by an examination of the opinion by the District Court of Appeal on the first hearing many findings of the trial court were approved and the cause was sent back to be tried on the sole issue of the account. It is perfectly clear that the account appeared in the referee's report. All else was mere surplusage and was so treated by the trial court. So viewing the report of the referee and the findings made on the second trial, we find no conflict whatever between the findings, whether we consider the findings made on the first trial separately and compare them with the findings made on the second trial, or otherwise. However, the finding criticised by the District Court of Appeal on the first trial and which was sent back to be retried was retried and a proper finding made thereon.

■ In making out his report the referee allowed to the defendant certain items designated "discount". Pointing to that word the plaintiff asserts that such items were interest and that the referee should not have allowed the items in favor of the defendant. On the face of the report it does

not necessarily follow that the discount allowed was interest. Not every item of discount is interest. The allowances may have been proper discounts to which the defendant was entitled and in the absence of a showing to the contrary we must assume that they were. When the referee's report came in the plaintiff filed exceptions to it. No single exception challenged the allowance of any of the items of discount.

The plaintiff claims that as against the settled account there could be no relief without reliable records to support the allowance of the relief. The record discloses that many witnesses were examined and that a vast amount of documentary evidence was introduced. Nothing in the record shows us that the proof was not clear and satisfactory. In its next point the plaintiff contends that it cannot be determined how the settlement of December 16, 1916, or how the settlement of August 28, 1915, were arrived at. As we have shown above, there is certainly no record before us that shows a want of proof.

Another point made is that the referee's report should have been rejected because it was prepared by counsel for defendant. Suffice to say that the point was presented to the lower court and was submitted on affidavits. The most that can be said is that perhaps there was a conflict in the statements contained in those affidavits. However, that conflict was addressed to the trial court and its ruling must be sustained unless there was an abuse of discretion. We find no abuse of discretion in the instant case.

It is claimed that evidence was received to the prejudice of the plaintiff. Some evidence was received before the trial court. The plaintiff does not claim that the errors occurred in taking that evidence. It does claim, however, that the referee made errors in receiving evidence. As shown above, we may not consider those matters. Again, it is claimed that the rights of the defendant are barred by the statute of limitations. An examination of the plaintiff's pleading shows that it did not plead a single statute of limitation. It neither pleaded the facts nor did it plead the statute in the manner provided by the code. (Code Civ. Proc., sec. 458.) As to laches, it is settled law that in the absence of special circumstances one is not guilty of laches in any shorter period of time than the period of

the statute of limitations. ▇ It is also settled law that the defendant may set up fraud or mistake as a defense at any time when he is sued on the contract which, as he claims, was obtained through fraud or mistake. (*Field* v. *Austin,* 131 Cal. 379, 382 [63 Pac. 692].)

It is said there was no fraud. That is apparently true, but the defendant's judgment has other evidence to support it. As we have stated above, the defendant filed an amended cross-complaint in which he alleged fraud. He did not introduce any proof on that subject in the trial court. ▇ As the reference was not a general one but was a special reference for the purpose of stating the account it is immaterial whether evidence of fraud was introduced before the referee.

In what has been said above we have tried to limit ourselves to such portions of the record as we are legally entitled to consider and have not rested at all on the transcript of the reporter's notes of proceedings before the referee. However, we have examined every passage therein that has been called to our attention. ▇ We find nothing purporting to be prejudicial error except the attack on ''discounts'' hereinabove referred to. The facts about such items were as follows: The two partners at times took contracts to do public work and were paid in warrants. After the warrants had been received some of them were sold. The difference between the face value of the warrant and the selling price is what the referee called ''discount''. In finding No. IX made by the trial court on the first trial and approved by the District Court of Appeal is contained a passage as follows: ''Otherwise, it was agreed that no salaries or other compensation should be drawn by either party and all profits thereunder were to be divided equally.'' In allowing a discount to Mr. Stansbury the plaintiff claims violence was done to said finding. We think not. In selling the warrants he was but transacting the partnership business. He was not given any ''salary or other compensation''.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 2, 1931, and an appli-

cation by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 31, 1931.